UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLA ANN THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No. 20-cv-06229 |
| v. | ) ) ) |
| MIDLAND CREDIT MANAGEMENT, INC., | ) ) ) |
| Defendant. | ) ) |
| | ) <u>Jury Demanded</u> |

**COMPLAINT**

Plaintiff, Carla Thompson, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), for a finding that Defendant's debt collection actions violated the FDCPA, and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

**STANDING**

3. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury and harm to her reputation as a result of Defendant sharing of false information regarding an alleged debt with a third party. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018).

**PARTIES**

5. Plaintiff, Carla Thompson ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a delinquent consumer debt allegedly owed for a Synchrony Bank consumer credit account. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

6. Defendant, Midland Credit Management ("MCM"), is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois. Its registered agent is Illinois Corporation Service Co., located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

7. MCM maintains and/or owns a website, www.midlandcredit.com.

8. MCM's website contains, in part, the following statements:

**Who is Midland Credit Management (MCM)?**

Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations. MCM has serviced millions of collection accounts over the years with the goal of helping consumers achieve financial freedom. MCM works with consumers and also partners with Midland Funding LLC, one of the nation's largest buyers of unpaid debt.

If you received a letter from MCM, this means a creditor you had an account with has closed your account and sold it to one of our family of companies. You will need to work with MCM, not your original creditor, to resolve your account.

MCM empowers consumers by creating payment plans that work for them. We have helped over 7 million consumers work toward improved financial health.

Midland Credit Management, Inc., "About Us", https://www.midlandcredit.com/help-center/faqs/, Accessed on 26 June 2020.

9. MCM's principle purpose is debt collection as almost all of the revenue it receives derives from the collection of debts.

10. Thus, MCM is a "debt collector" as that term is defined in § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

11. According to Defendant, Plaintiff incurred an alleged debt for goods and services used for personal family or household purposes, originally for a synchrony Bank account ("alleged debt").

12. The account was primarily used for personal and household items, including clothing.

13. The alleged debt is thus a "debt" as that term is defined at § 1692a(6) of the FDCPA.

14. Due to her financial circumstances, Plaintiff could not pay any debts and the alleged debt went into default.

15. MCM subsequently began collecting on the alleged debt.

16. In response to collection attempts by Defendant, Plaintiff consulted with the attorneys at Community Lawyers Group, Ltd., who, on July 31, 2020, sent a letter to MCM indicating that Plaintiff disputed the alleged debt. (Exhibit A, Dispute Letter).

17. MCM received Plaintiff's dispute on July 31, 2020.

18. Plaintiff's letter stated, in part, that the amount reported is not accurate.

19. A statement that "the amount reported is not accurate" evinces the intention to dispute the validity of at least a portion of the purported debt. *Evans*, 889 F.3d at 377. "There is simply no other way to interpret this language." *Id*.

20. On August 25, 2020, MCM communicated credit information regarding the alleged debt to the TransUnion consumer reporting agency, including a balance, an account number and the date reported. (Exhibit B, Redacted August Credit Report)

21. MCM failed to communicate that Plaintiff's alleged debt was disputed when it communicated other information to TransUnion regarding the alleged debt.

22. MCM had been notified twenty-five days prior of Plaintiff's dispute.

23. Defendant had sufficient time to update their records. *See Herbert v. Monterey Financial Services, Inc.*, 863 F. Supp. 76 (D. Conn. 1994) (holding that five days was enough time for a debt collector to update their records with information from a consumer's letter").

24. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

25. Defendant failed to communicate a dispute to the TransUnion credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to TransUnion.

26. MCM communicated credit information which it knew or should have known to be false, in violation of 15 U.S.C § 16923e(8), when it communicated a false balance to TransUnion and Plaintiff.

27. Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

28. MCM materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

29. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

30. Defendant's collection efforts, including the damage to Plaintiff's credit score, cause negative emotions including general annoyance, aggravation, and other garden variety emotional distress.

31. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

32. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

33. MCM failed to communicate a dispute to the TransUnion credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about

the dispute and communicated other information regarding the alleged debt to TransUnion.

## JURY DEMAND

Plaintiff demands trial by jury.

                                              By: s/Michael Wood
                                                  One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers LLC**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com